(73 Misc. Rep. 488.)

## In re SEIXAS' WILL.

(Surrogate's Court, New York County.   September, 1911.)

WILLS (§ 133*)—HOLOGRAPHIC WILL—VALIDITY.

A resident of Louisiana made a holographic will without witnesses in the state of New York while sojourning there. Such will was properly executed under the laws of Louisiana. *Held*, that under Decedent Estate Law (Consol. Laws 1909, c. 13) § 23, providing that a will of personal property executed by a nonresident according to the laws of his residence may be admitted to probate in the state, the will was valid as to testator's personal property in the state, and entitled to probate in any county of the state where he left such property.

[Ed. Note.—For other cases, see Wills; Dec. Dig. § 133.*]

In the matter of the probate of the last will and testament of Henry O. Seixas. Will admitted to probate as a will of personal property only.

George W. Simpson, for petitioner.

Taylor, Jackson & Brophy, Edgar H. Farrar, and Richard F. Goldsborough, for executor.

FOWLER, S.   This is an application by the New York executor of Henry O. Seixas to probate a holographic will, made without witnesses in the city of New York on August 10, 1910, according to the law of Louisiana, by the late Col. Henry O. Seixas, claiming to be then a resident of the state of Louisiana. The deceased it is to be noted left personal property within this county. The application for probate in this county was at first resisted by the Louisiana executor, who asserted that Louisiana, as the principal place of administration, should be the place of original probate, and that the New York executor was not entitled to letters by the law of Louisiana, as he was a conditional or adjunct executor only. The Louisiana executor, however, admitted that the surrogate had jurisdiction to probate the script propounded (and this is the main point), but insisted that it was discretionary with the surrogate to send the will for probate to Louisiana, and that this should be done. The Louisiana executor having meanwhile moved to amend his answer or objections, which was much resisted, the surrogate gave such motion a preference, and, having decided to grant the motion to amend, saw fit, of his own suggestion, to give the parties 10 days after the entry of the order to amend in which to bring the principal motion concerning the jurisdiction again on for rehearing, lest either party might be surprised by any new issue presented by the amended objections or answer. Surr. Dec. N. Y. County, August 23, 1911.

The cause now comes on for final decree. But the conflicting claims of the executors appear meanwhile to have been adjusted, and the New York executor has renounced all claim to letters testamentary. It is now the Louisiana executor who applies for our final decree of probate and for letters, based on the petition for probate filed by the New York executor. Thus there is at present no contention what-

ever over the jurisdiction of the surrogate in this cause. On the contrary, all the parties in court invoke the jurisdiction and concede it. But, if in point of fact the surrogate has not jurisdiction to grant probate of this script, executed in New York, according to the law of Louisiana, mere consent of the parties will not confer such jurisdiction. It is, therefore, for the surrogate himself to examine his own jurisdiction before proceeding farther in this cause.

That any person in interest may apply for the probate of a testamentary paper is apparent. Code Civ. Proc. § 2614. The citation being properly served and the parties in court, this cause is doubtless in a position for an adjudication at the instance of all the parties, if the surrogate possesses the power to grant the decree for probate and letters testamentary.

Section 23 of the decedent estate law is the source of the surrogate's jurisdiction in such a case as this. It provides that a will of personal property, executed by a person not a resident of the state, according to the laws of testator's residence, may be admitted to probate in this state. This section flows from chapter 118, Laws of 1876, in the year 1880 transferred to the Code of Civil Procedure. Code Civ. Proc. § 2611. It is not without interest that in the year 1857, or 1858, similar legislation seems to have taken place in England. St. 24, 25 Vict. c. 44, declares, in substance, that every will and testamentary instrument made out of the United Kingdom by a British subject, whatever may be the domicile of such person at the time of making the will, or at the time of his or her death, shall as regards personal estate be held to be well executed for the purpose of being admitted to probate, if the same be made according to the forms required either by the law of the place where the same was made, or by the law of the place where such person was domiciled when the same was made, or by the law then in force in that part of her majesty's dominions where he had his domicile of origin; and no will or other testamentary instrument will be held to be revoked or to have become invalid, nor will the construction thereof be altered, by reason of any subsequent change of domicile of the person making the same.

It is very obvious that the modern statutes indicated have much altered the prior law of both New York and England, with a view of enlarging particular probate jurisdictions. It was held before these statutes, but contrary to the opinion of that most eminent probate judge of England, Sir John Nicholl, that the law of the foreign domicile of a British subject is to govern in relation to his testament of personal property. Stanley v Bernes, 3 Hagg. Eccles. Rep. 373–465. Sir John Nicholl was, however, unwilling that a foreign law should be intruded within his jurisdiction, and that he should be compelled to administer it in foro domestico. Lord Westbury took an equally narrow view of a similar question (Enchin v. Wylie, 10 H. L. Cas. 1), but again this restrictive point of view was repudiated. Ewing v. Orr, L. R. (9 App. Cas.) 34, 39; L. R. (10 App. Cas.) 453. The tendency at present is to give a sort of personal status to foreigners within this jurisdiction. See "Renvoi Theory," 10 Col. Law Jour. 332. That

Col. Seixas was a citizen and resident of Louisiana constitutes him a quasi foreigner in this state for the purposes of the application of our domestic law, and our law has the power to recognize if it choose, his personal law. It is very curious that the modern legislation thus extending extraterritoriality is only a recrudescence of a very old status observable everywhere after the subsidence of the Roman Empire. It was Savigny, I think, who first made this point abundantly clear to the world, and it has never since been questioned.

If Col. Seixas was, in point of fact, a resident of the state of Louisiana at the time of his death, and was only a sojourner here when he made his testament in this city, it would seem that under the statute cited the surrogate has jurisdiction to grant the decree sought, always provided that the testament conforms with the law of Louisiana. It may be regarded as strange that Col. Seixas could, while in the state of New York, give this preference to the law of his own state, and that the surrogate should be constrained to recognize it in this state. But I think the statute and the decisions are controlling on this point. Decedent Estate Law, § 23; Code Civ. Proc. § 2476; subd. 2; Matter of Rubens, 128 App. Div. 630, 112 N. Y. Supp. 941; 23 Harv. Law Review, 467, 468, and cases there cited.

As the law of Louisiana is pro hac vice foreign law in this state, evidence was given on the hearing to the effect that a holographic testament, without attesting witnesses, was a sufficient testamentary disposition of personal property by the law of the state of Louisiana. This was necessary and proper evidence, as the surrogate could not notice judicially such law, even though it was the law of one of the United States. Monroe v. Douglass, 5 N. Y. 447; Hunt v. Johnson, 44 N. Y. 27, 40, 4 Am. Rep. 631; Thomas v. Robinson, 3 Wend. 267; Sheldon v. Hopkins, 7 Wend. 435; 1 Greenl. Ev. § 486. A similar rule holds between England and Scotland when not changed by statute, although every lawyer knows the influence of the civil law on the laws of both Louisiana and Scotland.

The point which troubled me not a little at first was the question of the domicile of Col. Seixas, for I take "domicile" to be synonymous with "residence" in the statute. Decedent Estate Law, § 23. The petition for probate stated that he was a resident of the city of New Orleans and state of Louisiana; but it is also stated in the petition:

"That he departed this life in the city of New York on the 19th day of May, 1911, his place of abode therein for over five years last past being located at 1 West Thirtieth street, Manhattan borough, New York City, in the county and state of New York."

It seemed to the surrogate that, in view of such conflicting allegations, the domicile of origin of Col. Seixas might have been lost; and, in this event, his will made in New York was a nullity by the law of this state. The domicile of origin and intention of a person may be changed by a de facto domicile of choice. But the evidence given in at the hearing on this point satisfies me that the legal residence and domicile of origin of Col. Seixas had not changed. He paid poll tax and voted in New Orleans, La., where he also maintained a residence, and his name appeared at all times in the public directory of

that city as a resident. It appears that Col. Seixas was without immediate family, and that he lived the life of a man of pleasure, having no serious responsibilities, and being much in Paris, much in New York. But he never abandoned his domicile of origin and choice; and he regarded himself, and was always regarded, as a Louisianian. While Col. Seixas no doubt lived much in New York, he also lived much in Paris, but he lived also much in New Orleans. His chief domestic establishment, indeed, was maintained in New Orleans. Under the proofs offered I must find that the domicile and residence of Col. Seixas were as alleged at the time of his death in the city of New Orleans and the state of Louisiana, and that, under the statute of this state, his testament as a will of personalty was sufficiently executed according to the law of Louisiana.

The decree for probate of the writing in question may pass, but as a will of personal property only.

Decreed accordingly.